IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CRISELDA ROMERO-MANZANO,                    3:15-CV-00508-BR

          Plaintiff,                        OPINION AND ORDER

v.

CARLTON PLANTS, LLC, dba
CARLTON PLANTS, and CARLTON
NURSERY COMPANY, LLC,

          Defendants.


**SHELLEY LATIN**
Legal Aid Services of Oregon
P.O. Box 1327
365 S.E. Third
Pendleton, OR 97801
(541) 276-6685

**JULIE R. SAMPLES**
Oregon Law Center
Farmworker Office
230 N.E. Second Ave
Suite D
Hillsboro, OR 97124
(503) 726 4381

          Attorneys for Plaintiff


1 - OPINION AND ORDER

MICHAEL C. PETERSEN
TRICIA M. OLSON
Heltzel Williams PC
P.O. Box 1048
Salem, OR 97308-1048
(503) 585-4422

        Attorneys for Defendants


**BROWN, Judge.**

    This matter comes before the Court on Defendants' Motion
(#41) for Summary Judgment.  For the reasons that follow, the
Court **GRANTS** Defendants' Motion and **DISMISSES** this matter **with
prejudice**.


## BACKGROUND

    The following facts are taken from the parties' Joint
Statement of Agreed Material Facts and other summary-judgment
materials and are undisputed unless otherwise noted.

     Defendant Carlton Plants, LLC, is an Oregon limited-
liability company that grows bare-root trees, ornamental shrubs,
and root stock on approximately 1,850 acres of land in Dayton,
Oregon.  Defendant Carlton Nursery Company, LLC, is an Oregon
limited-liability company that owns some of the land on which
Carlton Plants grows nursery stock.  Carlton Nursery leases the
land to Carlton Plants.  Carlton Nursery does not have any
employees and only rents and leases real property.  Jon Bartch is
the sole member and registered agent of both Carlton Nursery and

2 - OPINION AND ORDER

Carlton Plants.

Carlton Plants has two main divisions: bare root and propagation. Each division has one production manager who has oversight over his division and the authority to hire, fire, promote, and demote employees as well as to alter employees' rate of pay and to assign them to various work crews. Each division has two area supervisors under the production manager who are responsible for overseeing the work of crew leaders and the crews that perform work in their divisions. Each division has a number of crew leaders who supervise work crews. Crew leaders are responsible for, among other things: (a) preparing the buses used to transport workers to the fields, (b) gathering tools and water for their crews, (c) filling out time sheets for the laborers on their crews, (d) filling out attendance sheets, (e) instructing their crews how to perform their work and monitoring that work, and (f) completing evaluations of workers. Although crew leaders do not have the power to hire, fire, promote, discipline, or transfer crew members, their evaluations of crew members are considered by the production managers and the Human Resources Manager to make decisions about promotions, wage increases, discipline, and transfers. Each division also has a number of assistant crew leaders who assist crew leaders with the daily work of the crew.

Plaintiff Criselda Romero-Manzano worked for Carlton Plants

from 2003 to 2014.  During the relevant period Plaintiff worked
in the bare-root division, Carlton Davidson was the production
manager of the bare-root division, and Rosalio Rivera was one of
Plaintiff's area supervisors.  Until January 2012 Plaintiff was
assigned to work with Crew Leader Joe Arguello.[1]  After January
2012 Plaintiff was assigned to work as an assistant crew leader
with Crew Leader Jose Carrillo.

On April 2, 2013, Plaintiff met privately with Carlton
Plants' Human Resource Manager Sandra Siguenza.  Plaintiff
advised Siguenza that Carrillo was sexually harassing her.
Plaintiff told Siguenza that Carrillo periodically made Plaintiff
work separately from the rest of her crew and that he called her
outside of work to ask her out on dates.[2]  Plaintiff did not
provide any other details or instances of harassing conduct in
her meeting with Siguenza.  Plaintiff told Siguenza that she did
not want to work with Carrillo any longer and requested to be
transferred to a different crew leader.  Siguenza advised
Plaintiff that she would transfer her immediately.  Siguenza
asked Plaintiff to provide her with a written statement that
included any other details regarding harassment by Carrillo.

---

[1] It is not clear on the record whether Plaintiff was an
assistant crew leader under Arguello or only a member of his
crew.

[2] The record reflects Plaintiff did not tell Siguenza when
Carrillo called her to ask her out, but Plaintiff believes it was
in 2009.

4 - OPINION AND ORDER

Plaintiff, however, never provided Siguenza with a written statement or any other statement regarding harassment by Carrillo.

On April 3, 2013, following her meeting with Plaintiff, Siguenza called Davidson and requested he assign Plaintiff to a different crew leader.  On April 4, 2013, Davidson reassigned Plaintiff to Crew Leader Sam Hernandez.  Plaintiff's work hours, position, duties, rate of pay, and all other work benefits remained the same after her transfer to Hernandez's crew. Plaintiff testified at deposition that the harassment by Carrillo stopped after Plaintiff's April 3, 2013, meeting with Siguenza, and Plaintiff did not lodge any further complaints against Carrillo.

Plaintiff worked at Carlton Plants through mid-July 2013 on crews other than those run by Carrillo.  In July 2013 Plaintiff went on leave due to a work injury.  Plaintiff was terminated in April 2014 after she exhausted her medical leave.  The parties agree Plaintiff's termination was unrelated to the allegations in this matter.

On December 30, 2013, Plaintiff co-filed a charge of discrimination with the Oregon Bureau of Labor and Industries (BOLI) and the Equal Employment Opportunity Commission (EEOC) against Carlton Nursery only.  Plaintiff alleged claims for hostile work environment and retaliation for filing a workers'

compensation claim.[3]

On December 14, 2014, BOLI issued Plaintiff a Notice of Right to File Civil Suit advising Plaintiff that she must file an action against Carlton Nursery related to the allegations in her BOLI complaint within 90 days of the date of the Notice or her claims would be barred.

On March 25, 2015, the EEOC issued Plaintiff a Notice of Right to Sue advising Plaintiff that she must file an action against Carlton Nursery related to the allegations in her complaint within 90 days of the date of the EEOC Notice or her claims would be barred.

On March 26, 2015, Plaintiff filed a Complaint in this Court against Carlton Nursery only in which she asserted claims for hostile work environment in violation of Title VII, 42 U.S.C. § 2000e-2, and sex discrimination in violation of Oregon Revised Statute § 659A.030(1)(a)-(b).

On May 13, 2015, Carlton Nursery filed an Answer and Affirmative Defenses in which it denied Plaintiff's allegation that it was Plaintiff's employer and asserted several affirmative defenses based on the fact that Carlton Nursery was not Plaintiff's employer.

On June 19, 2015, Plaintiff filed an Amended Complaint to add Carlton Plants as a defendant.  Plaintiff asserted the same

---

[3] Plaintiff does not assert a claim for retaliation.

6 - OPINION AND ORDER

claims for hostile work environment in violation of Title VII and
sex discrimination in violation of Oregon Revised Statute
§ 659A.030(1)(a)-(b).

On June 30, 2015, Carlton Plants filed an Answer to
Plaintiff's Amended Complaint in which it asserted six
Affirmative Defenses including Plaintiff's alleged failure to
exhaust administrative remedies and claims time-barred under the
statute of limitations.

On May 18, 2016, Defendants filed a Motion for Summary
Judgment.  The Court took Defendants' Motion under advisement on
July 8, 2016.


**<u>STANDARDS</u>**

Summary judgment is appropriate when "there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law." *Washington Mut. Ins. v. United
States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  *See also* Fed. R.
Civ. P. 56(a).  The moving party must show the absence of a
dispute as to a material fact.  *Rivera v. Philip Morris, Inc.*,
395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly
supported motion for summary judgment, the nonmoving party must
go beyond the pleadings and show there is a genuine dispute as to
a material fact for trial.  *Id.*  "This burden is not a light one
. . . .  The non-moving party must do more than show there is

some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted).  A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011) (citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller*

8 - OPINION AND ORDER

*Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id*.


## DISCUSSION

Defendants move for summary judgment as to both of Plaintiff's claims on the grounds that (1) Carlton Nursery did not employ Plaintiff; (2) Plaintiff's claims against Carlton Plants are time-barred; and (3) even if Carlton Nursery was Plaintiff's employer and/or Plaintiff's claims against Carlton Plants are not time-barred, Plaintiff fails to establish a material dispute of fact exists as to her claims.

**I.  Carlton Nursery was not Plaintiff's employer.**

As noted, Defendants move for summary judgment as to Plaintiff's claims against Carlton Nursery on the ground that Carlton Nursery was not Plaintiff's employer and, therefore, cannot be liable to Plaintiff as a matter of law under Title VII or § 659A.030.

Title VII provides in relevant part:  "It shall be an unlawful employment practice for an *employer* - (1) to . . . discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1)(emphasis added).  An "employer" is defined as "a person

9 - OPINION AND ORDER

engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b). An "employee" is defined as "an individual employed by an employer." 42 U.S.C. § 2000e(f).

Similarly, Oregon Revised Statute § 659A.030(1)(b) provides in relevant part: "It is an unlawful employment practice: For an *employer*, because of an individual's . . . sex . . . to discriminate against the individual in compensation or in terms, conditions or privileges of employment." Emphasis added. An employer is defined as "any person who . . . directly or through an agent, engages or uses the personal service of one or more employees, reserving the right to control the means by which such service is or will be performed." Or. Rev. Stat. § 659A.001(4)(a). Thus, Title VII and Oregon statutes prohibit discrimination by "an employer."

Defendants note Carlton Nursery and Carlton Plants are separate and distinct corporate entities, and Plaintiff was hired by and worked only for Carlton Plants. The record reflects Carlton Nursery is a limited-liability company organized and operating for the sole purpose of owning real property that it leases to Carlton Plants for cultivation. Carlton Nursery has never had any employees. According to Defendants, because Carlton Nursery was not Plaintiff's employer, it cannot be liable to Plaintiff as a matter of law under either Title VII or § 659A.030. *See, e.g., Coffin v. Safeway, Inc.*, 323 F. Supp. 2d

10 - OPINION AND ORDER

997, 1002 (D. Ariz. 2004)(dismissing the plaintiff's Title VII sexual harassment claim against a party who was not the plaintiff's employer).

Plaintiff concedes she was "directly employed" by Carlton Plants and that Carlton Nursery is a separate corporate entity from Carlton Plants.  Nevertheless, Plaintiff asserts Carlton Nursery should be liable for "the discriminatory acts" of Carlton Plants under the "integrated-enterprise" test.  Plaintiff asserts courts have applied the integrated-enterprise test to hold one corporate entity liable for the acts of a separate corporate entity.  As Defendants point out, however, courts have used the integrated-enterprise test only to determine whether an employer with less than 15 employees is so interconnected with another employer that the number of both employers should be aggregated for the sole purpose of meeting the 15-employee requirement of Title VII.  For example, in *Kang v. U Lim America, Inc.,* the plaintiff worked for a California corporation, U Lim America, which employed six or fewer employees.  U Lim America also owned and operated U Lim de Mexico, a separate corporation that employed between 50 and 150 workers.  The plaintiff brought an action for national-origin discrimination in violation of Title VII against U Lim America, who asserted it was not covered by Title VII because it employed fewer than 15 people.  The Ninth Circuit applied the integrated-enterprise test to evaluate

whether the numbers of employees at U Lim America and U Lim de Mexico should be combined solely for the purpose of determining whether U Lim America should be considered as meeting the 15-employee requirement of Title VII.  296 F.3d 810, 815 (9th Cir. 2002).  The Ninth Circuit concluded the number of employees at U Lim America should be aggregated with the number of employees at U Lim de Mexico, and, therefore, U Lim America met the 15-employee requirement of Title VII.  *Id.* at 815-16.  The Ninth Circuit, however, did not conclude (and the plaintiff did not argue) that, as a result of the integrated-enterprise test, U Lim de Mexico was also liable under Title VII as the plaintiff's employer.  Although the Ninth Circuit has applied the integrated-employer test to combine the workforces of separate corporate employers to determine Title VII jurisdiction, it has not used the test to determine as a matter of law that both entities are employers of a particular employee.  In fact, in *Anderson v. Pacific Maritime Association* the Ninth Circuit specifically rejected the parties' assertion that the integrated-employer test could be used to impose joint liability on the remaining nonemployer defendant.  336 F.3d 924 (9th Cir. 2003).

In *Anderson* the plaintiffs brought an action under Title VII against the shipping and stevedoring companies that hired the plaintiffs; four chapters of their Union; and PMA, a nonprofit association of the stevedoring and shipping companies.  The

12 - OPINION AND ORDER

plaintiffs alleged they were subjected to a racially hostile work environment.  At some point the plaintiffs filed an amended complaint asserting Title VII claims against the union and PMA only.  Ultimately the plaintiffs' claims against the union were dismissed, and the district court entered summary judgment for PMA on the ground that PMA was not the plaintiffs' employer under Title VII.  *Id*. at 928.  In granting summary judgment the district court concluded, among other things, that the integrated-employment test was inapplicable to determine PMA's liability.  The Ninth Circuit affirmed the district court's grant of summary judgment noting:

> The district court's reluctance [to apply the integrated-employer test to determine PMA's liability] was justified.  The test does not determine joint *liability* as the parties suggest, but instead determines whether a defendant *can meet the statutory criteria* of an "employer" for Title VII applicability.

> Title VII applies to an employer only if that employer employs 15 or more employees.  42 U.S.C. § 2000e(b); *see also Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440 (2003).  A plaintiff with an otherwise cognizable Title VII claim against an employer with less than 15 employees may assert that the employer is so interconnected with another employer that the two form an integrated enterprise, and that collectively this enterprise meets the 15-employee minimum standard.  We use the integrated enterprise test to judge the magnitude of interconnectivity for determining statutory coverage.

> PMA does not dispute that it employs at least 15 employees. . . .  PMA's status as an employer in its own right[, however,] does not mean that a

13 - OPINION AND ORDER

>               claim by the Plaintiffs, who were not PMA's
>               employees, is cognizable under Title VII.

*Id.* at 928-29 (emphasis in original).  This Court, therefore,
declines to apply the integrated-enterprise test as a means of
determining whether Carlton Nursery may be liable as Plaintiff's
employer.

    Plaintiff also suggests Carlton Nursery may be held liable
either through piercing the corporate veil or the alter-ego
doctrine.  Courts have repeatedly made clear that corporations
are separate and individual entities that are not liable for the
acts of other corporations.  *See, e.g., Crystal Cruises, Inc. v.
Moteurs Leroy-Somer S.A.*, 545 F. App'x 647, 647-48 (9th Cir.
2013)("Corporations are treated as separate and distinct
entities.").  Thus, "piercing the corporate veil 'is an
extraordinary remedy which exists as a last resort, [when] there
is no other adequate and available remedy to repair plaintiff's
injury.'"  *State ex rel. Neidig v. Superior Nat. Ins. Co.*, 343
Or. 434, 445 (2007)(quoting *Amfac Foods v. Int'l Systems*, 294 Or.
94, 103 (1982)).  "The equitable power to pierce the corporate
veil . . . is exercised only [when] there is clear evidence that
those who control the corporation have used it to shield
themselves improperly from responsibility."  *AFD China
Intellectual Prop. Law (USA) v. AFD China Intellectual Prop. Law
Office*, 3:09-CV-1509-BR, 2014 WL 2619644, at *7 (D. Or. June 12,
2014)(citing *Salem Tent & Awning Co. v. Schmidt*, 79 Or. App. 475

14 - OPINION AND ORDER

(1986)).  Courts will also pierce the corporate veil under the
appropriate circumstances to prevent fraud and inequity.  *Id.*

Under Oregon law shareholders of a corporation may be held
liable if the corporation is a "mere 'instrumentality' or 'alter
ego' and [when] fraud or injustice has resulted." *Brodle v.
Lochmead Farms*, Inc., No. 10-cv-6386-AA, 2011 WL 4913657, at *6
(D. Or. Oct. 13, 2011)(quoting *Amfac Foods, Inc. v. Int'l Sys. &
Controls Corp.*, 294 Or. 94, 105 (1982)).  As the court explained
in *Brodle,* "[g]enerally alter ego liability applies to
shareholders."  2011 WL 4913657, at *6.  When a plaintiff has
failed to show a corporation has an ownership interest in another
corporation, alter-ego liability will not apply because "[i]t is
not enough [for liability of a separate corporation] to merely
claim that the [separate] corporations share employees and
business practices — some evidence of an ownership interest is
required for liability to attach." *Id*.  The record here does not
reflect Carlton Nursery and Carlton Plants share employees or
that Carlton Nursery has any ownership interest in Carlton
Plants.  As noted, they are, in fact, two entirely separate,
unrelated corporations.

Even if the alter-ego or veil-piercing theory applied to
separate corporations such as Carlton Nursery and Carlton Plants,
Plaintiff fails to establish such an extreme approach is
warranted here.  To hold an affiliated corporation liable under

15 - OPINION AND ORDER

an alter-ego theory under Oregon law, the court must find:

> (1)  the affiliated corporation "actually controlled" the other corporate entity;
>
> (2)  the affiliated corporation "used its control over the corporation to engage in improper conduct";
>
> (3)  as a result of the improper conduct, the plaintiff was harmed; and
>
> (4)  there is no other adequate and available remedy to repair plaintiff's injury.

*Brodle*, 2011 WL 4913657, at *6 (citations omitted).  Improper conduct includes:  (a) gross undercapitalization of the corporation, (b) milking the corporation by payment of excessive dividends, (c) misrepresentation, (d) commingling of assets, and (e) not holding out the corporate entity as a separate enterprise.  *Amfac*, 294 Or. at 109-10.  Plaintiff relies on alleged control of Carlton Plants by John Bartch, the sole member of Carlton Plants and Carlton Nursery, to support her assertion that the Court should pierce the corporate veil of Carlton Nursery and hold it liable for Carlton Plants.  Although Plaintiff concedes Carlton Nursery and Carlton Plants do not share personnel or payroll services, Plaintiff notes Carlton Plants pays rent to Carlton Nursery and Bartch is the sole member of both Carlton Nursery and Carlton Plants.  Plaintiff also asserts Bartch makes "employment decisions" for Carlton Plants and relies on Bartch's deposition testimony to support her assertion.  In his deposition, however, Bartch does not state he

16 - OPINION AND ORDER

makes the employment decisions for Carlton Plants.   During
Bartch's deposition Plaintiff's counsel asked him whether he was
"the person ultimately in control of every decision that is made
for Carlton Plants?"  Bartch responded:   "Again, that's a very
broad statement. . . .   I'm responsible for the business dealings
with Carlton Plants."  Bartch Depo. at 23.

More importantly, Plaintiff does not point to any evidence
in the record of gross undercapitalization of Carlton Nursery,
payment of any dividends by Carlton Nursery, any
misrepresentation by Carlton Nursery, or any failure of Carlton
Nursery to hold itself out as a separate enterprise from Carlton
Plants.  Plaintiff also fails to show that there is not any
"other adequate and available remedy to repair plaintiff's
injury" or to establish that fraud or inequity will result if the
Court declines to pierce Carlton Nursery's corporate veil.
*Amfac*, 294 Or. at 103.

On this record the Court concludes Plaintiff has not
established "clear evidence that those who control the
corporation have used it to shield themselves improperly from
responsibility."  *AFD China*, 2014 WL 2619644, at *7.  The Court,
therefore, declines to exercise its equitable power to pierce
Carlton Nursery's corporate veil and to hold it liable for the
actions of Carlton Plants.  Thus, Plaintiff has not established
Carlton Nursery was her employer, and, therefore, Carlton Nursery

17 - OPINION AND ORDER

is not liable to Plaintiff under either Title VII or § 659A.030 as a matter of law.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claims against Carlton Nursery.

## II.  Plaintiff's Title VII Claim against Carlton Plants is time-barred.

Defendants seek summary judgment as to Plaintiff's Title VII Claim against Carlton Plants on the ground that it is time-barred.

A plaintiff must file a timely charge of discrimination with the EEOC as a prerequisite to bringing an action under Title VII. 42 U.S.C. § 2000e-5(e)(1), which requires a complainant to file a charge with the EEOC within 180 days "after the alleged unlawful employment practice occurred" unless the complainant "initially institute[s] proceedings with a State or local agency," in which case the complainant must file an EEOC charge within 300 days.

The record reflects Plaintiff's alleged harassment by Carrillo ended no later than April 2, 2013.  Plaintiff filed her EEOC/BOLI complaint against Carlton Nursery only on December 30, 2013.  Defendants note 300 days before December 30, 2013, is March 5, 2013, and, therefore, Plaintiff may not base her claim on any alleged harassment that occurred before March 5, 2013. More importantly, the record reflects Plaintiff failed to comply with the prerequisite to filing a Title VII complaint set out in 42 U.S.C. § 2000e-5(e)(1) because Plaintiff did not file an EEOC

18 - OPINION AND ORDER

or BOLI complaint against Carlton Plants.  The Supreme Court and
Ninth Circuit have made clear that "[a]n individual's failure to
file a charge with the agency within [the] time frame [set out in
§ 2000e-5(e)(1)] will usually operate to bar that person from
bringing a lawsuit for failure to exhaust their administrative
remedies." *Ariz. ex rel Horne v. Geo Group, Inc.*, 816 F.3d 1189,
1202 (9th Cir. 2016)(citing *Zipes v. Trans World Airlines, Inc.*,
455 U.S. 385, 393-94 (1982)).  In addition, Plaintiff cannot now
exhaust her administrative remedies by filing an EEOC complaint
against Carlton Plants because, as noted, it has been more than
300 days since the last possible act of discrimination.

In her Response Plaintiff asserts the continuing-violation
doctrine applies to her Title VII claim, and, therefore, the
Court may consider all of Carrillo's acts of harassment because
Plaintiff has alleged at least one act of harassment occurred
after March 5, 2013.  Plaintiff's continuing-violation argument
however, relies on the EEOC complaint she filed as to Carlton
Nursery only.  Plaintiff does not cite any authority for the
proposition that filing an EEOC complaint against one corporation
satisfies the exhaustion requirement of § 2000e-5(e)(1) as to a
different, separate corporation, and, as noted, the Court has
already concluded Carlton Plants and Carlton Nursery are two
separate and distinct corporations and has declined to pierce the
corporate veil of Carlton Nursery or to apply the alter-ego

theory to Carlton Nursery and Carlton Plants.  The Court, therefore, concludes Plaintiff has failed to satisfy the exhaustion requirement of § 2000e-5(e)(1).  In addition, it has been more than 300 days since the last possible act of harassment (which occurred no later than April 2, 2013), and, therefore, Plaintiff may not now timely file an EEOC complaint against Carlton Plants.

Plaintiff also does not point to any evidence or make any allegations from which the Court could infer that equitable tolling of the exhaustion period would be appropriate.  The Ninth Circuit has explained "[e]quitable tolling focuses on whether there was excusable delay by the plaintiff and may be applied if, *despite all due diligence,* a plaintiff is unable to obtain vital information bearing on the existence of his claim."  *Huseman v. Icicle Seafoods, Inc.*, 471 F.3d 1116, 1120 (9th Cir. 2006) (quotation omitted)(emphasis in *Huseman*).  *See also Burnett v. New York Cent. R. Co.*, 380 U.S. 424, 429 (1965)(allowing equitable tolling when "a plaintiff has not slept on his rights, but rather, has been prevented from asserting them.").  Plaintiff does not allege she was mistaken or confused as to the fact that Carlton Plants was her employer.  In fact, the parties note in their Joint Statement of Material Facts that when she began working for Carlton Plants, Plaintiff received a copy of the "Carlton Plants Employee Handbook" and signed an Acceptance of

20 - OPINION AND ORDER

the Handbook.  The parties also agree in their Joint Statement
that the Carlton Plants Handbook contained a policy against
harassment that advised employees to report harassment to two
Carlton Plants supervisors or Jon Bartch.  In addition, Plaintiff
does not allege she was unable to file a timely EEOC/BOLI
complaint against Carlton Plants for any reason.

Accordingly, the Court grants Defendants' Motion for Summary
Judgment as to Plaintiff's Title VII claim against Carlton
Plants.

## III. Plaintiff's § 659A.030 Claim against Carlton Plants is time-barred.

Defendants move for summary judgment as to Plaintiff's
state-law claim for hostile work environment in violation of
§ 659A.030 against Carlton Plants on the ground that it is time-barred.

Oregon Revised Statute § 659A.875(1) and (2) provide in
relevant part:

> (1) . . . [A] civil action . . . alleging an
> unlawful employment practice must be commenced
> within one year after the occurrence of the
> unlawful employment practice unless a complaint
> has been timely filed [with BOLI].
>
> (2) A person who has filed a [BOLI] complaint
> . . . must commence a civil action under ORS
> 659A.885 within 90 days after a 90-day notice is
> mailed to the complainant under ORS 659A.880.

Thus, an individual who alleges an unlawful employment practice
must bring an action either within one year of the occurrence of

21 - OPINION AND ORDER

the unlawful practice or, if an individual has filed a BOLI complaint, within 90 days after BOLI has mailed its 90-day Notice letter.

As noted, Plaintiff's alleged harassment by Carrillo ended no later than April 2, 2013. Plaintiff did not file her original Complaint in this Court until March 26, 2015, which is more than one year after the last possible date of harassment. In order for her state-law claim to be timely, therefore, Plaintiff was required to file it not more than 90 days after BOLI mailed her the 90-day Notice letter. As noted, BOLI sent Plaintiff a right-to-sue Notice as to Carlton Nursery (the only party against whom she asserted her BOLI complaint) on December 30, 2014. Even if Plaintiff's BOLI complaint filed only against Carlton Nursery could be interpreted to encompass Plaintiff's state-law claim against Carlton Plants, the claim would be time-barred because Plaintiff failed to file her original Complaint against Carlton Nursery until March 26, 2015, which is 103 days after BOLI sent Plaintiff's 90-day Notice Letter.[4]

The record reflects Plaintiff received her Notice of Right to Sue from the EEOC on March 25, 2015, which is only one day before she filed her original Complaint in federal court. This Court and other courts in Oregon, however, have held a

---

[4] Plaintiff did not file her Amended Complaint adding Carlton Plants as a party until June 19, 2015, which is nearly seven months after BOLI sent Plaintiff a 90-day Notice Letter.

plaintiff's state-law claims under § 659A are time-barred when they are filed more than 90 days after the mailing of the BOLI letter even if filed less than 90 days after the plaintiff receives an EEOC right-to-sue letter.  *See, e.g., Sharer v. Oregon*, 481 F. Supp. 2d 1156, 1164 (D. Or. 2007)(concluding the plaintiff's state-law whistleblower claim under § 659A was time-barred because it was filed more than 90 days after the mailing of the BOLI letter but less than 90 days after the plaintiff received an EEOC right-to-sue letter)(citing *Snook v. Rabold*, No. CV 06-849-MO, 2006 WL 2934274 (D. Or. Oct. 12, 2006), and *Chestnut v. Fred Meyer Jewelry, Inc.*, No. Civ. 02-3088-CO, 2004 WL 1900556 (D. Or. Aug. 24, 2004)).  Thus, because Plaintiff did not file her original Complaint against Carlton Nursery in this Court within 90 days of BOLI mailing her 90-day Notice letter, the fact that she filed her original Complaint within 90 days of receipt of her EEOC right-to-sue letter does not render her state-law claims timely.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's state-law claim against Carlton Plants.

<u>**CONCLUSION**</u>

For these reasons, the Court **GRANTS** Defendants' Motion (#41)

23 - OPINION AND ORDER

for Summary Judgment and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 24th day of August, 2016.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge